

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| MARIE ASSA'AD-FALTAS, MD, MPH, §<br>Plaintiff, §<br>§<br>vs. §<br>§<br>RICHLAND COUNTY SHERIFF'S §<br>DEPARTMENT, *as employer of Deputy* §<br>*Pierce/Pearce*; LEON LOTT, *officially as* §<br>*Sheriff of Richland County, South Carolina for* §<br>*injunctive relief*; FORMER RCSD DEPUTY §<br>PIERCE/PEARCE, *individually for damages*; §<br>*and all their subordinates and/or agents who* §<br>*did and/or intended to injure Plaintiff*, §<br>Defendants. § § | Civil Action No. 3:18-00578-MGL |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff Marie Assa'ad-Faltas (Assa'ad), proceeding pro se, filed this action seeking damages and an injunction against Defendants Richland County Sheriff's Department (RCSD), Richland County Sheriff Leon Lott (Lott), Former RCSD Deputy Pierce/Pearce (Pearce), and "all their subordinates and/or agents who did and/or intend to injure Plaintiff" (collectively, Defendants), alleging a number of violations under 42 U.S.C. § 1983 and several state law claims brought pursuant to the South Carolina Tort Claims Act (SCTCA).  The matter is before the Court for review of the Report and Recommendation (Report II) of the United States Magistrate Judge

suggesting Defendants' motion for summary judgment as to Assa'ad's state law claims be granted in part and denied in part. The Report II was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a de novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

## II.    FACTUAL AND PROCEDURAL HISTORY

The present action arises out of an interaction between Assa'ad and Pearce on February 29, 2016. Pearce, a senior deputy with the RCSD, traveled to Assa'ad's apartment complex (Austin Woods) to serve a court order directing her to show cause why she should not be evicted (show cause notice). Pearce, in uniform and driving his marked patrol car, brought Officer Sean Kilcoyne (Kilcoyne) as a witness.

Pearce parked his patrol car outside of Austin Woods and waited for Assa'ad to arrive. Assa'ad entered Austin Woods and continued driving into a cul-de-sac past her apartment building. Assa'ad contends she drove past her apartment building and into a cul-de-sac "to be sure there [were] no drunk people or wild animals . . . ." Mot. to Am. Assa'ad's Compl., Ex. 2 at p.12.

Pearce followed Assa'ad into Austin Woods, parked his patrol car in front of her apartment building and stepped out. Pearce did not follow Assa'ad into the cul-de-sac.

Assa'ad circled around the cul-de-sac and proceeded to drive back to the entrance of Austin Woods to retrieve her mail at the communal mailboxes. As Assa'ad passed Pearce—who remained in front of Assa'ad's apartment building standing next to his patrol car—on her way to the entrance of Austin Woods to retrieve her mail, Pearce purportedly called for her to stop. Assa'ad counters she did not hear Pearce give the instruction to stop her car and properly and lawfully drove past him. Pearce alleges Assa'ad drove her car directly at him in an attempt to strike him, an allegation Assa'ad denies. As soon as Assa'ad passed Pearce on her way towards the entrance of Austin Woods, Pearce returned to his patrol car, followed Assa'ad, and activated his blue lights. Assa'ad, in response, pulled over her car.

Pearce asserts he stopped Assa'ad's car for two traffic violations, arguing she attempted to run over him with her car and her vehicle was in violation of a county noise ordinance. Assa'ad disputes both allegations. During this traffic stop interaction, Pearce failed to give Assa'ad a citation for either purported traffic violation, merely serving her with the show cause notice.

On April 25, 2016, the Richland County Magistrate Court (Magistrate Court) held a hearing concerning Assa'ad's show cause notice, and Pearce testified regarding the above-referenced February 29, 2016, incident at Austin Woods and stated he effectuated a traffic stop on Assa'ad due to her attempt to run him over at her apartment complex. At this hearing, Pearce declined to opine as to the alleged noise related issues with Assa'ad's vehicle. Accordingly, Assa'ad avers Pearce perjured himself at the hearing by testifying she attempted to run him over with her car.

After the hearing, Assa'ad contacted the Magistrate Court and attempted to procure a video recording of the hearing. According to Assa'ad, in response to her inquiry, "I received a

3

threatening letter from that court and had to ask Legal Aid, which had closed my case, to get that CD [of the video recording of the hearing] for me instead. . . . I sincerely believe Defendants were behind the court's threatening [me] with contempt for seeking that CD." Assa'ad Aff., Assa'ad's Resp. in Opp'n to Defs.' Mot. for Summ. J. Ex. 1 at ¶¶ 7–8.

Defendants previously filed a motion for summary judgement whereby they sought dismissal of all of Assa'ad's Section 1983 and state law claims. The Magistrate Judge, in her July 19, 2019, Report (Report I), recommended all Section 1983 claims be dismissed and the Court decline to exercise supplemental jurisdiction over the state law claims.

Upon a review of Report I, the Court declined to adopt the Magistrate Judge's recommendation regarding Assa'ad's Section 1983 claim against Pearce for allegedly violating her Fourth Amendment rights by effectuating a traffic stop without legal justification and denied Defendants' motion for summary judgment as to that claim. The Court adopted the Magistrate Judge's recommendation as to Assa'ad's other Section 1983 claims and granted Defendants' motion for summary judgment as to those claims. Lastly, because Assa'ad's Fourth Amendment claim remained, the Court retained jurisdiction over the state law claims.

Defendants subsequently filed the instant motion and asked the Court for summary judgment as to the following South Carolina state law claims asserted by Assa'ad: (1) false detention, which the Magistrate Judge construed as false arrest or imprisonment, against Lott; (2) civil conspiracy against all Defendants, (3) intentional infliction of emotional distress (IIED) against all Defendants, (4) defamation against all Defendants, and (5) attempted malicious prosecution and "tortious interference with [Assa'ad's] civil rights and rights to obtain and give evidence" against all Defendants. Compl. ¶ 19. Additionally, Defendants argued Lott is entitled

summary judgment on all of the state law claims against him on the basis of absolute sovereign immunity under the SCTCA.

The Magistrate Judge, in her August 3, 2020, Report II, recommended the Court (1) deny Lott's motion as to the false arrest or imprisonment claim, (2) grant Defendants' motion as to the civil conspiracy claim, (3) grant Defendants' motion as to the IIED claim, (4) grant Defendants' motion as to the defamation claim, (5) grant Defendants' motion as to the attempted malicious prosecution and "tortious interference with her civil rights and rights to obtain and give evidence" claim, and (6) deny Lott's motion as to the absolute sovereign immunity defense.  Assa'ad filed Objections on August 20, 2020, and Defendants filed a single Objection on August 24, 2020.  The Court has reviewed the Objections and holds them to be without merit.  It will therefore enter judgment accordingly.

### III.     DISCUSSION AND ANALYSIS

The Court will address Defendants' single Objection first.  Defendants object to the Magistrate Judge's recommendation the false imprisonment claim against Lott should survive their motion for summary judgment.  "False arrest in South Carolina is also known as false imprisonment."  *Carter v. Byrant*, 838 S.E.2d 523, 527 (S.C. Ct. App. 2020).

Defendants, in their Objection, concede their previous argument regarding Assa'ad's alleged attempt to hit Pearce with her car is a disputed factual matter and instead raise a new legal theory to justify Pearce's pulling over of Assa'ad in Austin Woods.  *See* Defs.' Obj. at 2 fn.1 ("Defendants recognize that the issue of [Assa'ad] attempting to strike [Pearce] with her car is a disputed factual matter. . . . [Defendants] instead [raise] a separate legal basis regarding reasonable suspicion for the stop.").

Defendants argue Pearce had reasonable suspicion to effectuate the traffic stop and probable cause to charge Assa'ad with violating S.C. Code Ann. § 16-9-320(A). S.C. Code Ann. § 16-9-320(A) provides "It is unlawful for a person knowingly and willfully to oppose or resist a law enforcement officer in serving, executing, or attempting to serve or execute a legal writ or process . . . ."

In support of Defendants' argument, they posit Assa'ad's act of driving past Pearce towards the exit of Austin Woods once she saw him in uniform in front of her apartment with papers in hand and allegedly calling on her to stop—in addition to her lengthy and well-documented history with the South Carolina Court system over the last twenty years—subjectively demonstrated to Pearce "that [Assa'ad] had no intention of stopping her car to be served with the show cause notice." Defs.' Obj. at 7.

Consequently, Defendants "submit that at the moment [Ass'ad] failed to stop and continued driving [towards the exit of Austin Woods and away from Pearce], Pearce had articulable, reasonable suspicion to believe that she was knowingly disregarding his instructions and circumventing being served with process [in violation of S.C. Code Ann. § 16-9-320(A)]." Defs.' Obj. at 6 (footnote omitted).

Although the Magistrate Judge, in Report II, noted "the Court has [previously] rejected Defendants' arguments, holding whether Pearce had legal justification to stop Assa'ad is a 'factual dispute to be resolved by a jury'", her reasoning concerned Defendants' at-the-time argument as to the alleged vehicular noise violation of Assa'ad's car. Report II at 10 (quoting Mar. 19, 2020, Order). Because Defendants' failed to raise this new S.C. Code Ann. § 16-9-320(A) argument in their motion for summary judgment as to Assa'ad's false imprisonment claim, Report II provides no analysis on this new legal theory.

To prevail in a false imprisonment claim in South Carolina, a plaintiff must prove "(1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." *Law v. South Carolina Dep't of Corrections*, 629 S.E.2d 642, 651 (S.C. 2006).

Assa'ad's false imprisonment claim turns on the third element of the tort, whether her restraint was lawful. Accordingly, the dispositive issue before the Court is whether Pearce had reasonable suspicion to believe Assa'ad knowingly and intentionally resisted his efforts and attempts to serve the show cause notice in violation of S.C. Code Ann. § 16-9-320(A).

At this summary judgment stage, Assa'ad's and Pearce's vastly different statements as to the events at Austin Woods create questions of fact for a jury to decide. *See Jones v. City of Columbia*, 389 S.E.2d 662, 663 (S.C. 1990) ("South Carolina follows the minority rule that the issue of probable cause is a question of fact and ordinarily one for the jury."). Accordingly, the Court overrules Defendants' single Objection.

Assa'ad raises four Objections, and the Court will now turn to them. In Assa'ad's first Objection, she objects to the wording of the Magistrate Judge's recommendation the Court deny Defendants' request Lott be entitled to absolute sovereign immunity from Assa'ad's tort claims because his deputy's actions were not within the type of exceptions to the general waiver of governmental immunity found in the SCTCA.

In particular and notwithstanding the fact the Magistrate Judge's recommendation is favorable to Assa'ad, she requests the Court "issue a public-policy-incorporating reasoning for accepting or rejecting political-subdivision immunity beyond the R&R summary 'rejection' of [Assa'ad]'s position [that the SCTCA is not applicable to her state-law claims because South Carolina is constitutionally powerless to make Richland County sovereign]." Assa'ad's Obj. at 5.

7

In this Objection, Assa'ad fails to direct the Court to a specific error in the Magistrate Judge's Report II as to her analysis on this issue. *See Orpiano*, 687 F.2d at 47 ("Courts have also held de novo review to be unnecessary in analogous situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."). Consequently, inasmuch as the Court agrees with the Magistrate Judge's recommendation Lott be unentitled, under the SCTCA, to absolute sovereign immunity from Assa'ad's tort claims because his liability arises "from Pearce allegedly stopping [Assa'ad] without legal justification and thereafter" intentionally misstating his reasons for doing so, the Court will overrule this Objection. Report II at 9.

Turning to Assa'ad's second Objection, she disagrees with the Magistrate Judge's recommendation the Court grant Defendants' motion for summary judgment as to her civil conspiracy claim. Specifically, Assa'ad contends she "ha[s] no duty to counter [Defendants'] total absence of evidence [proving the lack of a conspiracy] with evidence of her own, [e]specially that she ha[s] been denied discovery." *Id.*

As noted by the Magistrate Judge, "[Assa'ad's] conspiracy claim is grounded in two allegations." Report II at 11. First, Assa'ad contends "[Pearce] conspired with others to falsely testify [at the April 25, 2016, hearing in Magistrate Court] that he had absolutely informed [Assa'ad] that he had stopped her [at Austin Woods] because she had tried to run him over with her car." Compl. ¶ 10 (internal quotations omitted). And, second, Assa'ad argues "[Pearce] conspired with other[s] to deny/delay [Assa'ad] access to a copy of the defendant-made video and a copy of the court-made audio of his [April 25, 2016][,] testimony [at Magistrate Court]." *Id.* ¶ 11.

The Magistrate Judge, in Report II, noted Assa'ad "has failed to carry her burden to defeat Defendants' motion for summary judgment [as to her first civil conspiracy claim]" and "[s]imilar to [Assa'ad]'s previous allegation [of civil conspiracy], the record is devoid of any evidence supporting this [second] allegation." Report II at 12–13.

Here, in this Objection, Assa'ad fails to present any evidence supporting her conspiracy allegations, and she is unable, as a matter of law, to carry her burden as a plaintiff asserting civil conspiracy claims against Defendants. *See generally Vaught v. Waites*, 387 S.E.2d 91, 95 (S.C. Ct. App. 1989) ("Lastly, there is no genuine issue of material fact involved because the record is devoid of any evidence suggesting a conspiracy."). Inasmuch as the Court agrees with the Magistrate Judge's recommendation the Court should grant Defendants' motion for summary judgment as to Assa'ad's conspiracy claim, it need not address Assa'ad's contention Defendants' use of the intracorporate conspiracy defense is improper.

Accordingly, summary judgment as to Assa'ad's civil conspiracy claim is appropriate. Therefore, the Court will overrule this Objection.

In Assa'ad's third Objection, she posits the Magistrate Judge improperly determined evidence in the record "does not support a finding of intentional infliction of emotional distress." Assa'ad's Obj. at 6 (quoting Report II at 15). Assa'ad maintains Defendants knew of her fear of law enforcement and intentionally tried to exploit those fears during the Austin Woods incident. Also, Assa'ad argues she lives in constant fear of being "falsely arrested and prosecuted" for a multitude of crimes arising from the traffic stop, including the attempted murder of Pearce, resisting arrest, reckless driving, noise ordinance violations, and "any other crimes [Defendants] may dream up in [their] unending pursuit of non-existent probable cause." *Id.* (internal quotation omitted).

9

To prove a prima facie case of IIED, a plaintiff must establish four elements:

> (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct;
> (2) the conduct was so extreme and outrageous so as to exceed all possible bounds of decency and must be regarded as atrocious, and utterly intolerable in a civilized community;
> (3) the actions of the defendant caused plaintiff's emotional distress; and
> (4) the emotional distress suffered by the plaintiff was severe and such that no reasonable man could be expected to endure it.

*Hansson v. Scalise Builders of South Carolina*, 650 S.E.2d 68, 70 (S.C. 2007) (quoting *Ford v. Hutson*, 276 S.E.2d 776, 778 (S.C. 1981)) (internal quotations omitted). A heightened burden of proof exists for the second and fourth elements. *See id.* at 71 (quoting *Ford*, 276 S.E.2d at 778) ("In *Ford*, the Court emphasized the heightened burden of proof articulated in the second and fourth elements of the tort, insisting that in order to prevail in a tort action alleging damages for purely mental anguish, the plaintiff must show that both the conduct on the part of the defendant was "extreme and outrageous," and that the conduct caused distress of an "extreme or severe nature.").

Additionally the *Hansson* court opined:

> Under the heightened standard of proof for emotional distress claims emphasized in *Ford* [which draws heavily from the Restatement (Second) of Torts], a party cannot establish a prima facie claim for damages resulting from a defendant's tortious conduct with mere bald assertions. To permit a plaintiff to legitimately state a cause of action by simply alleging, "I suffered emotional distress" would be irreconcilable with this Court's development of the law in this area.

*Id.* at 72.

The Magistrate Judge, in Report II, proclaimed no evidence provided by Assa'ad supports her contention Defendants knew of her alleged fear of law enforcement and perpetually acted to exacerbate those fears during Pearce's visit to Austin Woods (element one). Also, the Magistrate

Judge noted Assa'ad fails to provide evidence that Defendants' conduct at Austin Woods rises to the level of conduct so extreme and outrageous so as to exceed all possible bounds of decency (element two).

Here, Assa'ad's mere bald assertions Defendants knew of her alleged fear of law enforcement and attempted to rekindle those fears through service of the show cause notice is insufficient to demonstrate conduct so extreme and outrageous so as to exceed all possible bounds of decency. And, Assa'ad's contention she lives in constant fear of future charges relating to her traffic stop may also be categorized as mere bald assertions.

Furthermore, Assa'ad also "fail[s] to provide any legally sufficient evidence in this case to show that [her] emotional distress was 'severe' within the contemplation of [South Carolina's] mental anguish jurisprudence." *Hansson*, 650 S.E.2d at 72.

Accordingly, summary judgment is appropriate as to Assa'ad's claim of IIED, and the Court will overrule this Objection.

Lastly, in Assa'ad's fourth Objection, she argues the Magistrate Judge "incorrectly reads the text, spirit[,] and purpose of [S.C. Code Ann.] § 16-9-50 [as it relates to her defamation claim]." Assa'ad's Obj. at 6 (capitalization and emphasis modified). In particular, Assa'ad, in her response in opposition to Defendants' motion for summary judgment, argues Section 16-9-50 provides her a right to monetary recovery for allegedly defamatory statements made by Pearce under oath in the April 25, 2016, Magistrate Court hearing.

The Magistrate Judge, in Report II, opined:

> [Assa'ad]'s invocation of S.C. Code Ann. § 16-9-50 does not assist her. This statute concerns disposition of fines related to a finding of perjury and provides that a "person as shall be aggrieved, hindered or molested by reason of the offense [of perjury] will sue for the same by action in any court of competent jurisdiction." [Assa'ad]'s

11

>instant claim is one for defamation, she is not able to bring a claim for perjury, and Defendants have not been found guilty of perjury.

Report II at 18, fn 11. Inasmuch as Defendants have not been found guilty of perjury, the Court, as a matter of law, must overrule this Objection.

After a thorough review of Report II and the record in this case pursuant to the standards set forth above, the Court overrules Defendants and Assa'ad's Objections, adopts Report II, and incorporates it herein.

Therefore, it is the judgment of the Court Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Defendants' motion is **GRANTED** as to Assa'ad's civil conspiracy, IIED, defamation, attempted malicious prosecution and tortious interference with her civil rights and rights to obtain and give evidence claims; and the motion is **DENIED** as to Assa'ad's false imprisonment claim and Lott's absolute sovereign immunity defense.

**IT IS SO ORDERED.**

                                          s/Mary Geiger Lewis
                                          MARY GEIGER LEWIS
                                          UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
February 17, 2021